### Complaint of BROWARD COUNTY TRAFFIC ASSOCIATION.

Railroad & Public Utilities Commission.

March 17, 1953.

R. N. Trezise and R. J. Healey, both of Ft. Lauderdale, for complainant.

Lewis W. Petteway, General Counsel, and R. Y. Patterson, Jr., both of Tallahassee, for the Commission.

Harold B. Wahl, Russell L. Frink and William J. DeHoff, all of Jacksonville, LeRoy Collins, Tallahassee, Walter C. Scott, Jr., Norfolk, Va., and Charles P. Reynolds, Washington, D. C., for respondents.

F. C. Hillyer, Jacksonville and Rhodes C. Berry, Chicago, for U. S. Gypsum Co., intervenor, Thomas E. Grady and R. W. Smith, both of Miami, for Greater Miami Traffic Association, intervenor, M. W. Wells, Orlando, R. F. Mackrell, Chicago, and D. M. Akers, Buffalo, for National Gypsum Co., intervenor.

Chairman JERRY W. CARTER, Commissioner RICHARD A. MACK and Commissioner WILBUR C. KING participated in the disposition of this case.

BY THE COMMISSION.

### History of Proceedings before Commission

On October 12, 1949 the Broward County Traffic Association filed with this commission its complaint against the Florida East Coast and Seaboard Air Line railroads, charging that through their tariff publication agent they published and maintained rates on plaster, plasterboard and related articles, in carloads, from Jacksonville to points in Broward County which are higher than those published and maintained on the same commodities from the origin to Miami, and that such rates to such points in Broward County are unjust, unfair and relatively unreasonable, and unjustly discriminatory against persons and localities in Broward County to the undue preference and advantage of Miami and consignees located at said point in violation of the statutes of this state.

On October 27, 1949 the Greater Miami Traffic Association and the Jacksonville Traffic Bureau, Inc. filed petitions for leave to

intervene. On October 31, 1949 complainant filed objections to the petition of Jacksonville Traffic Bureau, Inc. for leave to intervene.

On March 8, 1950, pursuant to the provisions of rules 6 and 7 governing practice and procedure before the commission, the commission issued to the railroads its rule to satisfy or plead to the complaint, and on March 22, 1950 the railroads filed their joint and several answers to the complaint.

On April 3, 1950 National Gypsum Co. filed its petition for leave to intervene, and a few days later complainant filed objections to such petition.

On June 7, 1950 the commission issued a notice of public hearing on the formal complaint and further notice that it had overruled complainant's objections to the petitions of Jacksonville Traffic Bureau, Inc. and National Gypsum Co. for leave to intervene, and had granted the petitions of the Jacksonville Traffic Bureau, Inc., National Gypsum Co. and Greater Miami Traffic Association for leave to intervene.

On July 6 and 7, 1951, the commission held a public hearing in the Broward County Courthouse during which the U. S. Gypsum Co. presented a petition for leave to intervene, which petition was granted.

## Order No. 1815

On July 31, 1952 the commission issued its order no. 1815 finding that the rates published and maintained by the respondent railroads on plaster, plasterboard and related articles, in carloads, from Jacksonville to Deerfield Beach, Pompano Beach, Ft. Lauderdale, Port Everglades Junction, Dania, Holywood and Hallandale, in Broward County, which are higher than those maintained by the same carriers on the same commodities from Jacksonville to Miami, are unjust, unfair and relatively unreasonable, and unjustly discriminatory against persons and localities in Broward County to the undue preference and advantage of Miami and consignees located at said point contrary to the statutes of this state.

The commission further found that there is no lawful basis for maintaining in the future a level of rates on the commodities from Jacksonville to Broward County points which is higher than rates on the same items from Jacksonville to Miami, and that in the future the railroads should establish just, fair, reasonable and non-discriminatory rates thereon which should be no higher than rates contemporaneously maintained from Jacksonville to Miami.

Order no. 1815 ordered and directed the railroads to cease and desist on and after August 15, 1952 from maintaining rates on such items from Jacksonville to Broward County destinations which are higher than those maintained thereon from Jacksonville to Miami. It further ordered that on and after that date the railroads should maintain rates between such points which should be no higher than those contemporaneously charged from Jacksonville to Miami.

On August 12, 1952, the railroads filed their request for reopening and reconsideration, oral argument, and request for stay of order no. 1815, and on the next day the commission stayed the effective date thereof pending disposition of the request for reopening and reconsideration.

## Order No. 1826

On August 29, 1952 the commission issued its order no. 1826 denying the request of the railroads for reopening, reconsideration and oral argument. Order no. 1826 approved and affirmed in every respect order no. 1815 except the effective date of August 15, 1952 which was automatically stayed under the commission's rules by the filing of the request for reconsideration, and provided that the effective date should be on and after September 15, 1952.

On September 12, 1952 the railroads jointly and severally filed their response to order no. 1815 as affirmed by order no 1826, giving notice to the commission that they would not comply with order no. 1815, alleging it to be invalid, not within the jurisdiction and power of the commission, confiscatory and an unconstitutional invasion of their property rights.

## Judicial Review

On September 26, 1952 the commission filed its petition for alternative writ of mandamus in the circuit court for Broward County at Ft. Lauderdale. Alternative writ of mandamus was issued to the railroads directing them forthwith to comply with orders no. 1815 and 1826 or show cause why they have not done so before the court.

The railroads filed a motion to quash the alternative writ of mandamus, and on December 2, 1952 the matter was heard before the court. The court granted petitions of National Gypsum Co., Greater Miami Traffic Association, U. S. Gypsum Co., Jacksonville Traffic Bureau, Inc., and Broward County Traffic Association for leave to intervene and be made parties to the mandamus proceeding.

On December 23, 1952 the court held the commission order void on its face and quashed the alternative writ of mandamus, stating that while it was not unsympathetic with the commission's attitude there were not sufficient basic findings to support the commission's conclusions and that the commission had not complied with basic legal requirements in making its order.

The purpose of this lengthy historical review is to refresh all interested parties with the many procedural stages to which the formal complaint of the Broward County Traffic Association has been subjected since its initial filing on October 12, 1949.

Because the circuit court quashed only the alternative writ of mandamus and did not quash the petition for mandamus, thereby retaining jurisdiction for any further review that may be necessary, upon an amended petition, the commission, in the interest of justice and in order to prevent further delay, has elected to amend its order.

The commission, like a court, may of its own motion or by request correct or amend any order still under its control without notice and hearing to parties interested, provided such parties cannot suffer by reason of the correction or amendment, or if the matters corrected or amended were embraced in testimony taken at a previous hearing. See Leonard Bros. Transfer & Storage Co. v. Douglass (Fla.), 32 So. 2d 156, quoting State ex rel Burr, et al, State Railroad Com'rs v. Seaboard Air Line Ry. Co. (Fla.), 111 So. 391, 392.

## Findings

After due and careful consideration of the evidence adduced in this proceeding, the commission finds that:

1. The Jacksonville-Miami rates on plaster, plasterboard and related articles are water depressed rates based upon relief from the Long and Short Haul Law granted by this commission, said rates being within the zone of reasonableness as maintained and limited pursuant to the provisions of section 350.56, Florida Statutes 1951.

2. There is no existing water competition on plaster, plasterboard and related articles from Jacksonville to Miami.

3. Jacksonville-Miami water competition has been, and is, merely potential.

4. The Jacksonville-Broward County rates on plaster, plasterboard and related articles are truck competitive adjustments with the water depressed Jacksonville-Miami rates.

5. Water competition from Jacksonville is just as potential to Port Everglades as it is to Miami.

6. Dealers of plaster, plasterboard and related articles in Broward County points are subjected to truck competitive adjustments of $1.68

and $1.92 per ton on plaster and $1.68 and $2.16 per ton on plasterboard resulting in a competitive disadvantage to dealers of the same commodities in Miami. Dealers of plaster, plasterboard and related articles in Miami thus have a preference of $1.68 and $1.92 per ton on plaster and $1.68 and $2.16 per ton on plasterboard over Broward County points. The $1.68, $1.92 and $2.16 per ton adjustment is unduly prejudicial to points in Broward County and unduly preferential to Miami.

7. The local consignees of these commodities must absorb the freight charges.

8. Miami-Broward County truck competition does not in fact exist.

9. The Jacksonville-Broward County rates are unreasonable.

10. The spread of the June 30, 1946 differential has been increased by the application of the Ex Parte increases. Although not within this docket, the commission can and does take judicial notice that this spread increases to an even greater percentage by the application of Ex Parte 168 and 175 increases effective May 1952 and April 1953.

11. The Jacksonville-Broward County rates are unreasonable; water competition between Jacksonville and Miami does not exist and is merely potential; and water competition is just as potential from Jacksonville to Broward County; therefore, no alternative relief should be afforded when the commission finds the Jacksonville-Broward County rates unreasonable per se.

12. The reasonableness of the Jacksonville-Miami rates is not involved in this proceeding. The Jacksonville-Miami rates are maximum prescribed rates. The only issue here is whether or not the rates from Jacksonville to the Broward County points should be reduced to the level of or lower than the Miami rates.

13. The rates published and maintained by respondent carriers on plaster, plasterboard, and related articles, in carloads, from Jacksonville to points in Broward County, which rates are higher than those maintained by the same carriers on the same commodities from Jacksonville to Miami, are unjust, unfair, and relatively unreasonable, and unjustly discriminatory against persons and localities in Broward County to the undue preference and advantage of Miami and consignees located at said point contrary to the statutes of this state.

14. There is no lawful basis for maintaining in the future a higher level of rates on plaster, plasterboard, and related articles, in carloads, from Jacksonville to the aforesaid points in Broward County than the rates on the same commodities from Jacksonville to Miami.

15. The car mile earnings indicate the Jacksonville-Miami rates are reasonably compensatory.

16. The railroads' per car mile earnings at Broward County points, based on the Jacksonville-Miami rate and minimum, will increase by application of the rates prescribed herein.

17. Only intrastate rates are involved in this proceeding and this commission has no jurisdiction over the Port Wentworth, Georgia, interstate rates to points in Florida. (While the commission did not consider interstate rates, the parties alluded to the interstate differential and it is presumed the railroads will so maintain the adjustment they have established.)

### Conclusion

It is the duty of this commission to make reasonable and just rates of freight tariffs to be observed by all railroads doing business in this state over their respective lines.

In view of the foregoing findings from the testimony adduced, and the exhibits thereto, and after careful and due consideration of the entire record in this proceeding, it is, therefore, ordered, adjudged and decreed that the respondent carriers, Florida East Coast Ry. Co. and Seaboard Air Line Railroad Co. be and they are hereby ordered and directed on and after April 1, 1953 to cease and desist from maintaining and applying rates on plaster, plaster-board and related articles, in carloads, from Jacksonville to Deerfield Beach, Pompano Beach, Ft. Lauderdale, Port Everglades Junction, Dania, Hollywood and Hallandale, in Broward County, which are higher than those presently published and maintained on the same commodities from Jacksonville to Miami.

It is further ordered and adjudged that the respondent carriers on and after April 1, 1953 shall maintain and apply on plaster, plasterboard and related articles, in carloads, from Jacksonville to said points in Broward County rates which shall be no higher than those contemporaneously maintained and applied on the same commodities from Jacksonville to Miami.

It is further ordered that order no. 1815 be and the same is hereby cancelled and the instant order containing the above findings be and the same is hereby made the order of this commission.