## Application of TARIFF PUBLISHING AGENTS.

Railroad & Public Utilities Commission.

April 6, 1956.

Harold B. Wahl, Jacksonville, for Florida East Coast Ry., applicant.

Donal L. Turkal, Norfolk, Va., for Seaboard Air Line R. R., applicant.

Supporting the application: F. C. Hillyer, Jacksonville, for U. S. Gypsum Co. and Jacksonville Traffic Bureau; M. W. Wells, Or-

lando, for National Gypsum Co., Phillips Industries, Inc. and Handley Lumber Co., Inc:, Orlando; B. H. Overton, St. Petersburg, for Traffic & Rate Bureau, St. Petersburg Chamber of Commerce, Lee County Chamber of Commerce, Ft. Myers, Sarasota and Bradenton Chambers of Commerce; Charles W. Loe, Jr., Tampa, for Tampa Traffic Association and Tampa Traffic Bureau.

Protestants: Frank J. Kelly, Miami, for Greater Miami Traffic Association; Ralph M. Brown, Miami Beach, for Maule Industries, Miami; and R. J. Healey, Fort Lauderdale, for Broward County Traffic Association and cities of Pompano Beach, Dania, Fort Lauderdale and Hollywood.

Chairman WILBUR C. KING, commissioners JERRY W. CARTER and ALAN S. BOYD participated in the hearing and disposition of this case.

BY THE COMMISSION.

Pursuant to notice dated March 8, 1956 the commission held a public hearing on March 19, 1956 in the commission hearing room, Orange Court Hotel, Orlando.

By this proceeding the common carrier railroads operating in this state seek authority to revise their carload rates on gypsum plaster, gypsum wallboard and related articles, between points in Florida as set forth in exhibit A to Intrastate Application No. 825, as amended, filed by C. A. Spanninger and A. H. Carson, tariff publishing agents, in the name of and on behalf of all carriers participating in the affected tariffs.

The proposed rates will result generally in both reductions and increases. Present ratings and rates are published in Exceptions 26, ICC-108, S.F.T.B. Tariff 763-B, ICC-1278, 765-D, ICC-1255 and 820-A, ICC-1295. This application also proposes to cancel the exceptions ratings and commodities rates, where higher or lower, published in the aforesaid tariffs, and permit the rates as contained in the aforesaid exhibit A to apply, and continue the rates from Jacksonville shown in pages 4 and 5 of Supplement 6 to C. A. Spanninger Tariff 765-D. The application as amended would cancel the commodity rates on plaster, plasterboard and related articles from Jacksonville to Florida East Coast destinations presently published in Items 64460-B through 64660-E, Supplement 98, page 47, to Tariff 820-A, ICC-1295.

This application was supported by the testimony of Dave B. Green, assistant chief traffic officer for the Florida East Coast Ry.; Joseph A. Kane, assistant general freight agent, Seaboard Air'

Line R.R. Co.; Clinton E. Bond, assistant general freight agent for the Atlantic Coast Line Ry.; Rhodes C. Berry, vice president and general traffic manager of U. S. Gypsum Co.; R. E. Mackrell, general traffic manager of National Gypsum Co.; Miller O. Phillips, Jr., assistant general manager of Phillips Industries, Inc.; Ben H. Overton, traffic manager of the St. Petersburg Chamber of Commerce; and Charles W. Loe, Jr., Tampa Traffic Association. The only protesting testimony was by Roland A. Smith, Jr., on behalf of the Greater Miami Traffic Association; Ralph M. Brown, traffic manager for Maule Industries; and R. J. Healey, traffic manager of the Broward County Traffic Association. It would serve no useful purpose to review in detail the many exhibits received and the individual testimony of each witness.

The carriers, in an endeavor to meet motor carrier competition, propose to publish uniform rates for equal distances within and throughout the south and within other southern states, all subject to the general increase of 6% as approved by the Interstate Commerce Commission in Ex parte 196. The proposed uniform rates are substantially less than the current general basis of rates on gypsum products, carload minimum rate 40,000 pounds, viz.— 17½% of first class rates on gypsum plaster and gypsum lath and 22½% of first class rates on gypsum wallboard. The only proposed increase in the present intrastate rates in Florida would arise from the cancelation of the special commodity rates, carload minimum rate 80,000 pounds, from Jacksonville to points on the lower east coast of Florida.

The adjustments on plaster, plasterboard and related articles in the south are covered in Plaster, Plasterboard and Related Articles, 218 I.C.C. 406; Gypsum Lath in the South, 235 I.C.C. 399; and Certain-Teed Products Corp. v. Atlanta & St. A.B. Ry. Co., 272 I.C.C. 191. The Florida rates were first uniformly established with the interstate rates by our orders nos. 1286 and 1289.

The protestants do not oppose the statewide reductions in rates subject to the carload minimum weights of 40,000 and 60,000 pounds, but they oppose cancelation of the 80,000 pound rates from Jacksonville to the Fort Lauderdale-Miami area. The only controverted issue is whether we should permit cancelation of the 80,000 pound rates to the West Palm Beach-Miami area.

The first publication of the 80,000 pound rates from Jacksonville to Miami, with higher rates for carload minimum weight of 40,000 pounds at intermediate points, was designed to meet a competitive warehousing situation in Miami at a time when gypsum products were being hauled by water from North Atlantic ports

to Miami, warehoused there, and distributed by truck out-bound from Miami. To enable the carriers to participate in this movement relief was granted under section 350.56, Florida Statutes. Later, the 80,000 pound rates were required also to intermediate points such as West Palm Beach and Fort Lauderdale. See our order nos. 1815 [3 Fla. Supp., 58, 60] and 1884. The applicable portion of this statute is—"Whenever a carrier by railroad shall, in competition with a water route, reduce the rate on the carriage of any species of freight to or from competitive points, it shall not be permitted to increase such rates unless, after hearing by the railroad commissioners, it shall be found that such proposed increase rests upon changed conditions other than the elimination of water competition."

From the evidence adduced at the hearing we find that many changes in conditions have occurred since the 80,000 pound rates were first established. The warehousing situation at Miami disappeared some years ago. There has been no water movement of these commodities from Port Wentworth or Jacksonville ports to West Palm Beach to Homestead for several years. The original Fourth Section Relief was based on actual movements from eastern ports, and potential movements from southern ports. Since the 80,000 pound rates were established, expansion of the Jacksonville plant prevents direct access to the river front. Within the past few years substantially more than half of the traffic from the Jacksonville plant to points in Florida has been hauled by a motor carrier. Originally, truck competition was not an important factor in the movement of these commodities. Truck competition is now a very vital and compelling force in the handling of this traffic. Difficulties have been encountered in making shipments of 80,000 pounds per car because of complaints by laborers and the supply of empty cars. Decentralization of industry by the establishment of new plants in the south has caused a susceptibility to trucking.

Conditions which led to our approval of the 80,000 pound rates with higher rates to intermediate points have changed substantially —and no special situation now warrants us in continuing our approval of the long and short haul departures incident to such rates. Both gypsum manufacturers testified that new plants would soon be opened in New Orleans. This will result in more production available from the southern and border plants. The available production market conditions are vital factors in this proposed adjustment. The adjustment has been approved by all of the other state commissions in the south—and the railroads and the shippers are ready to proceed with the interstate proposal. If the entire adjustment is not approved contemporaneously and concurrently, dis-

criminations will of necessity result, both intrastate and interstate. It is the duty of this commission to make reasonable and just rates to be observed by all railroads doing business in the state over their respective lines. Preferential or discriminatory rates cannot be sanctioned in the exercise of our jurisdiction.

After careful consideration of the entire record in this matter the commission finds that the railroads' Intrastate Application no. 825, as amended, should be approved, and that the railroads should be authorized to publish the proposed uniform basis of rates, subject to carload minimum rates of 40,000 pounds and 60,000 pounds, respectively, effective on the same date as the like uniform rates for like distances and carload minimum are published to become effective on interstate traffic within and throughout the south.

It is ordered that Intrastate Application no. 825, as amended, filed by Messrs. Spanninger and Carson, is granted, and that the railroads are authorized to publish the proposed uniform basis of rates, subject to carload minimum rates of 40,000 and 60,000 pounds, respectively, to become effective on the same date as the like uniform rates for like distances and carload minimum are published to become effective on interstate traffic within and throughout the south.

---

Commissioner Carter votes to deny cancellation of the 80,000 pound carload water depressed rate to the Miami territory and further votes to issue a permissive order allowing publication of the 80,000 pound minimum to all points in the entire state.